Thomas C. Chimera, J.
In this action for an order permanently enjoining defendant Neises from engaging in or being employed in the field of 1 ‘ exerography ’ ’ [in essence, copying by electrostatic methods] and from disclosing to any actual or potential competitor of plaintiff any information Neises received during his employ by plaintiff, as well as for an accounting from defendant Dennison for any profits or earnings received by them by virtue of their utilization of any trade secrets or confidential information obtained from Neises, plaintiff now moves for a temporary injunction restraining Neises from continuing his employment with Dennison pendente lite. The motion is granted.
Neises is now, by consent and pursuant to a stay previously issued and continued by this court until determination of this *781 motion, temporarily restrained from utilizing or disclosing any information or knowledge received during his employ by Xerox relating to trade secrets, business processes or other confidential matter.
The issue raised on this motion is whether this stay should be continued or enlarged in any manner. The facts are essentially undisputed except as to Neises’ activities and exposures during the course of his employment with Xerox and the basis for his employment by Dennison.
Xerox is the dominant company in the field of copying machinery utilizing the method which now bears its name — xerography. In 1961 Neises was employed by Xerox and in 1966 signed an agreement, prepared by Xerox, containing a restrictive employment covenant which extended for a period of two years following the termination of his employment. Neises’ tenure with Xerox commenced in a position as salesman and thereafter he moved up to become, by 1962, General Manager of Technical Service. He was then promoted to National Service Manager in 1963 and a year later was made Manager of Technical Operations and Planning. In January, 1965 he became Manager of Field Sales and Service for the Business Products and Systems Division and later in 1965, he became Director of Office Products Marketing. In February, 1966, he became Manager of Divisional Planning and, in the beginning of 1967, Divisional Controller and Manager of the Business Products and Systems Control Department. In that latter title, Neises occupied an important position on the executive level and received compensation, including bonus, of about $50,000 per year. It appears that he had several managers of other divisions reporting to him and was privy to many of the discussions and decisions made with reference to future planning operations of Xerox.
Defendant Dennison first entered into the field of manufacturing electrostatic copying machines in 1964 and has since attained some degree of success in the field, although it is clear that its share of the market is minor when compared with that of Xerox. In July, 1968 Neises notified Xerox by letter of his resignation and his desire to terminate employment as of the end of that month. Some argument has been raised concerning the effect of this letter upon the six-month notice provision of Neises’ employment agreement, but in my opinion, resolution of this argument is not necessary for a determination of this motion.
Neises left Xerox’ employ, clearly without Xerox’ consent and commenced service as “president” of defendant Dennison’s Copier Division.
*782 Neises’ and Dennison’s arguments on this motion are directed toward two ends: (1) proof that the restrictive covenant is unreasonable on its face; and (2) that Neises was hired byDennison not because of his knowledge of the electrostatic copying field but because of his general managerial ability. If as both Neises and Dennison claim, Neises was hired for his general financial and managerial ability only, then it would have to be explained why he was placed in over-all control as £ £ president ” of the Copier Division of his new employer’s business and, if Neises’ strength is in fact his general financial and managerial skills it would have to be explained why his new employer did not engage him in a more restricted capacity limited to his alleged limited skills. Moreover, if Neises’ worth as a general financial and managerial genius is all that it is said to be, he should have little difficulty in obtaining employment in any other noncompetitive field during the proscribed period. Finally, there is enough in these papers to suggest that he need not suffer loss of employment at all since his position with Xerox appears still to remain open. And there is enough in these papers also to cast in doubt the credibility of both Neises and Dennison when one considers that Neises was already engaged about his new master’s business in Framingham, Mass., even before August 1, 1968, the date upon which he hoped to be released from Xerox’ employment as his written notice requested.
On the oral argument, a record of which was taken, defendants conceded that Neises had knowledge of new products, marketing strategy, the state of the £ £ art ’ ’ in the field and Xerox’ vulnerable customer accounts. In the face of these admissions, it is difficult to see how Neises could, in his position as president of Dennison’s Copier Division, whether consciously or unconsciously, not utilize this information for the best interests of his new employer and to the detriment of his old employer. It is abundantly clear that the electrostatic copying field is one in which competition is intense and that the importance of that field is recognized by anyone reading advertisements in business magazines and other publications.
Considering the volatile state of the £ £ art ’ ’ in this field, conceded by counsel for both sides, it does not appear that the two-year period of the restrictive covenant is unreasonable. Considering the positions Neises held with Xerox and presently holds with Dennison, it clearly appears that enforcement of the covenant is necessary to protect Xerox.
This is not the case of a salesman or other low level employee unlikely to possess knowledge of trade secrets and top-level *783 executive decisions as to a future course of business. Nor does this appear to be the case of one engaged in a field whereby its nature trade secrets are not likely to exist.
Under the circumstances, therefore, it seems that enforcement of the covenant is warranted. The temporary injunction as requested shall issue on condition that plaintiff posts an undertaking to protect defendants against any damage by virtue of said injunction, in an amount to be suggested by the parties on settlement of an order to be entered herein.